(C.D. 2425)

JOHN G. STEPHENSON, III *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 23, 1963)

Plaintiff not represented by counsel.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise which is the subject of the instant protest consists of a fur jacket of Danish origin that was imported at Philadelphia and assessed for duty under 19 U.S.C.A., section 1001, paragraph 1519(e) (paragraph 1519(e), Tariff Act of 1930, as modified by T.D. 51802) at 25 per centum ad valorem as "Articles, wholly or partly manufactured (including fur collars, fur cuffs, and fur trimmings), wholly or in chief value of fur, not specially provided for: Other." It is claimed in the protest that the fur jacket is entitled to free entry under 19 U.S.C.A., section 1201, paragraph 1798(c)(2) (paragraph 1798(c)(2), Tariff Act of 1930, as amended) and 19 U.S.C.A., section 1651(c) (section 651(c), Tariff Act of 1930).

The facts are not in dispute. The plaintiff and his wife are residents of Rosemont, Pa. While traveling in Europe in 1961 on a summer vacation trip, they purchased the jacket in question in Copenhagen, Denmark, on August 1, 1961. They returned to this country on September 12, 1961, entering the United States through the port of St. Albans, Vt., at which time declaration of the merchandise in issue was made. The jacket was shipped through the mail, arriving at Philadelphia on October 20, 1961, where entry of the jacket was made on the same day and liquidated as entered on October 21, 1961. At the time the fur jacket was purchased, free entry was permitted under paragraph 1798(c)(2), *supra*, as follows—

(c) In the case of any person arriving in the United States who is a returning resident thereof—

\*    \*    \*    \*    \*    \*    \*

(2) articles \* \* \* acquired abroad as an incident of the journey from which he is returning, for his personal or household use, but not imported for the account of any other person nor intended for sale, if declared in accordance with regulations of the Secretary of the Treasury, up to but not exceeding in aggregate value—

(A) $200, if such person arrives \* \* \* from any other country after having remained beyond the territorial limits of the United States for a period of not less than forty-eight hours, and \* \* \* has not claimed an exemption under this subdivision (A) within the thirty days immediately preceding his arrival; and

(B) $300 in addition, if such person has remained beyond the territorial limits of the United States for a period of not less than twelve days and has not claimed an exemption under this subdivision (B) within the six months immediately preceding his arrival.

On August 10, 1961, paragraph 1798(c) (2), *supra*, was amended by Public Law 87–132 to reduce the exemption from $500 to $100 for a temporary period, to take effect between September 9, 1961, and July 1, 1963.

The collector applied the $100 duty exemption provided for in paragraph 1798(c) (2), *supra*, as amended by Public Law 87–132, against the duty assessment on the involved entry, by reason of plaintiff's arrival in this country after September 9, 1961, and before July 1, 1963, from his journey abroad. Plaintiff contends, upon the authority of 19 U.S.C.A., section 1651(c), that the collector should have applied against the involved entry the $500 duty exemption contained in paragraph 1798(c) (2), *supra*, before that statute was amended by Public Law 87–132. Section 1651(c), *supra*, which is relied upon by plaintiff, states:

> The repeal of existing laws or modifications or reenactments thereof embraced in this chapter shall not affect any act done, or any right accruing or accrued * * * prior to such repeal, modifications, or reenactments * * *.

Plaintiff argues that the purchase of the fur jacket abroad gave rise to an accruing right to the claimed duty exemption within the meaning of section 1651(c), *supra*, and that such right was not affected by the subsequent enactment of Public Law 87–132. The Government maintains that plaintiff possessed no such right to the claimed duty exemption and argues, in substance, that the law in effect on the date of plaintiff's arrival in the United States, rather than the law in effect on the date of plaintiff's purchase of the subject merchandise abroad, determines what rights plaintiff has in the matter of duty exemptions, and that, as such, the reduced exemption provided for in paragraph 1798(c) (2), *supra*, as amended by Public Law 87–132, was properly applied by the collector.

We are of the opinion that section 1651(c), *supra*, may not be invoked by plaintiff to preserve statutory privileges which have been superseded by other statutes limiting such privileges. *Joseph O. Saurette* v. *United States*, 1 Cust. Ct. 38, C.D. 10. We use the word "privileges" advisedly, because we do not perceive the claimed right, whether accruing or accrued, to be anything more than a privilege which Congress may withdraw or modify at any time—there being no vested right to import foreign merchandise into this country. *The Board of Trustees of the University of Illinois* v. *United States*, 20 CCPA 134, T.D. 45773. But even if the duty exemption contended for by plaintiff were considered to be a matter of right in the sense that even a privilege may not be arbitrarily withdrawn or curtailed, the savings clause in section 1651(c), *supra*, would not be available to plaintiff to preserve such right from suspension. Section 1651(c), *supra*, relates solely to laws in existence at and prior to the passage of the Tariff Act of 1930 which are in some way affected by

the act of 1930. Section 1651(c), *supra*, does not operate upon amendments made within the Tariff Act of 1930 itself, of which section 1651(c), *supra*, is a part. Such a construction of this savings clause would render it virtually impossible for Congress to effectively provide for modification of provisions of the act of 1930 as and when it deemed such modification expedient or necessary, as in the cutoff dates on quota merchandise, for example.

The case of *The Mengel Co.* v. *United States*, 20 CCPA 399, T.D. 46232, which is cited by plaintiff in this connection, does not support the application of section 1651(c), *supra*, to amendments made by Congress to various provisions of the Tariff Act of 1930 from time to time. If anything, that case is consonant with our interpretation of the scope of section 1651(c), *supra*. In the *Mengel* case, the question decided was whether a provision in the Tariff Act of 1922 pertaining to drawback was superseded by a like provision on the subject of drawback in the Tariff Act of 1930. The court there held that the provision in the act of 1922 was not superseded by the provision in the act of 1930 by reason of section 1651(c).

Plaintiff lays great stress upon the act of purchasing the fur jacket abroad as giving him a vested right, adverting to such expressions as governmental encouragement of foreign purchases by American tourists, reliance upon the larger duty exemption as being an inducement to make such foreign purchases, and what he regarded as frustration of the legislative intent to curb such foreign expenditures in cases where purchases of foreign goods antedated the enactment of the reduced duty exemption legislation. Actually, it will be observed from paragraph 1798(c)(2), *supra*, that Congress placed no emphasis in this legislation upon the manner by which the merchandise was acquired. Thus, it is entirely possible under paragraph 1798(c)(2), to claim the duty exemption with respect to merchandise acquired abroad by means other than by purchase, such as by gift or bartering. But, however the merchandise is acquired abroad, it is essential under paragraph 1798(c)(2), *supra*, that it be acquired *as an incident of the journey* from which the resident is returning in order to qualify such merchandise for the duty exemption. *Cf. United States* v. *Herbst*, 48 CCPA 145, C.A.D. 781. The aforementioned arguments of plaintiff, as well as his argument favoring the extension of the effective date of the new law in deference to accruing rights of American residents who went abroad and made purchases of foreign goods while abroad on the strength of the old law, are not persuasive against the statutory requirement.

As we read paragraph 1798(c)(2), *supra*, the date of arrival in this country of the returning resident fixes his right to exemptions under its provisions. All of the duty exemption provisions contained in paragraph 1798(c)(2), *supra*, are prefaced by the statement *In the*

*case of any person arriving in the United States who is a returning resident thereof.* This language, it seems to us, is a clear expression of the legislative intent to fix the act of arrival of the resident as the event which determines the duty exempt status of his merchandise. In the case at bar, that status was determined on September 12, 1961, the date of plaintiff's arrival in the United States. At that time, paragraph 1798(c)(2), *supra*, as amended by Public Law 87–132, was in effect and governed the exemptions to which plaintiff was entitled. The collector allowed the reduced exemption provided for in that statute in the assessment of duties against the involved entry, and we hold that the collector's action in this regard was proper. Since no claim has been made concerning the amount of the duties assessed against the involved entry, the collector's assessment is presumed to be correct.

Plaintiff also claimed, in his brief and argument, that paragraph 1798(c)(2), *supra*, as amended by Public Law 87–132, is unconstitutional as applied to the fur jacket which was purchased before this statute was enacted. However, we entertain some doubt as to the timeliness of such claim, in view of the omission of the claim from the protest filed by plaintiff, notwithstanding the fact that such claim could then have been made the subject of protest. Also, even though plaintiff argued this point at the hearing, he did not propose an amendment to his protest to embrace the claim of unconstitutionality. (See *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335, and *Lamborn & Co., Inc.* v. *United States*, 27 CCPA 46, C.A.D. 60, certiorari denied, 308 U.S. 589.) But even if it were proper to consider this claim of unconstitutionality under the instant protest, we would be disinclined to sustain it by reason of the view which we have heretofore taken with respect to the absence of an accruing right to a duty exemption as to which Public Law 87–132 could be said to be retroactive. Public Law 87–132 was plainly prospective in application, and the higher duty exemption contended for by plaintiff could have been availed of thereunder only had plaintiff returned to this country before September 9, 1961.

For the reasons stated, the protest is overruled. Judgment will be entered accordingly.